UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

SALUS CAPITAL PARTNERS, LLC,

                        Petitioner,

        - against -

                                       17 CV 05536 (NRB) (KHP)

ANDREW MOSER,

                        Respondent.

------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO DENY CONFIRMATION OF ARBITRATION AWARD



RUSKINMOSCOUFALTISCHEK P.C.

*Attorney for Respondent*
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556
(516) 663-6600

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND AND FACTS ......................................................................................... 2

    A.  RELATIONSHIP OF THE PARTIES AND NATURE OF
        CONTROVERSY ............................................................................................ 2

    B.  ARBITRATION PROCEEDING .................................................................... 5

    C.  AWARD ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.  THIS PROCEEDING SHOULD BE DISMISSED BECAUSE IT IS
       PROCEDURALLY DEFECTIVE ................................................................. 7

    II.  THIS COURT SHOULD NOT CONFIRM THE ARBITRATION
        AWARD BECAUSE IT EXCEEDED THE ARBITRATOR'S
        AUTHORITY ................................................................................................. 8

        A.  ATTORNEY'S FEES AND ARBITRATION COSTS ........................ 8

        B.  ATTORNEY'S FEES FOR INVESTIGATION ............................... 11

        C.  DISGORGEMENT OF COMPENSATION ..................................... 12

    III.  THE AWARD IS SO DISPROPORTIONATE FROM THE
        AMOUNT IN CONTROVERSY SO AS TO PRECLUDE
        CONFIRMATION ......................................................................................... 14

CONCLUSION ................................................................................................................ 15

704235

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Alstom v. Gen. Elec. Co.*,
228 F. Supp.3d 244 (S.D.N.Y. 2017)...................................................................9

*Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*,
20 F. Supp.2d 670 (S.D.N.Y. 1998)..............................................................9, 11

*Bon Temps Agency, Ltd. v. Greenfield*,
212 A.D.2d 427, 622 N.Y.S.2d 709 (1st Dep't 1995) ...................................13

*Chevron U.S.A. Inc. v. Consol. Edison Co. of N.Y. Inc.*,
872 F.2d 534 (2d Cir. 1989)...........................................................................12

*City of Binghamton v. Whalen*,
141 A.D.3d 145, 32 N.Y.S.3d 727 (3d Dep't 2016) ......................................13

*DRR, L.L.C. v. Sears, Roebuck and Co.*,
949 F. Supp. 1132 (D. Del. 1996)...................................................................10

*Fairhaven Apts. No. 6 v. Frances Dolan*,
72 Misc.2d 590, 339 N.Y.S.2d 787 (Dist. Ct. Suffolk Cty. 1972).....................8

*G.K. Alan Assoc., Inc. v. Lazzari*,
44 A.D.3d 95, 840 N.Y.S.2d 378 (2d Dep't 2007)
*aff'd*, 10 N.Y.3d 941, 862 N.Y.S.2d 855 (2008)............................................13

*Garrity v. Lyle Stuart, Inc.*,
40 N.Y.2d 354, 386 N.Y.S.2d 831 (1976) ......................................................14

*Gotham Partners, L.P. v. High River Ltd. P'ship*,
76 A.D.3d 203, 906 N.Y.S.2d 205 (1st Dept. 2010)....................................9-10

*HealthPro Bioventures, LLC v. Prometic Life Sciences Inc.*,
No. 10 Civ. 3295, 2011 WL 5419706 (S.D.N.Y. Nov. 8, 2011) ......................10

*Kowaleski v. New York State Department of Correctional Services*,
16 N.Y.3d 85, 917 N.Y.S.2d 82 (2010) ..........................................................12

*Matter of Local 342 v. Town of Huntington*,
52 A.D.3d 720, 860 N.Y.S.2d 607 (2d Dep't 2008) ...................................13-14

*Matter of Country Wide Ins. Co. v. Polednak*,
114 A.D.2d 754, 494 N.Y.S.2d 709 (1st Dep't 1985) ......................................8

*Matter of Loiacono v. Nassau Community College,*
262 A.D.2d 485, 692 N.Y.S.2d 113 (2d Dep't 1999) .................................................................11

*Matter of Stewart Tabori & Cheng, Inc. (Stewart),*
282 A.D.2d 385, 723 N.Y.S.2d 492 (1st Dep't 2001) .................................................................11

*Murray v. Beard,*
102 N.Y. 505 (1886) .................................................................................................................12

*Oliver B. Cannon and Son, Inc. v. Dorr-Oliver, Inc.,*
394 A.2d 1160 (Del. Sup. Ct. 1978) ........................................................................................10

*Sammi Line Co., Ltd. v. Altamar Navegacion S.A.,*
605 F. Supp. 72 (S.D.N.Y. 1985) ......................................................................................8-9, 11

*Schwartz v. Leonard,*
138 A.D.2d 692, 526 N.Y.S.2d 506 (2d Dep't 1988) .................................................................13

*Sawtelle v. Waddell & Reed, Inc.,*
304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dep't 2003) ...............................................................14

*Travelers Indem. Co. of Ill. v. F & S London Pub. Inc.,*
270 F. Supp.2d 330 (E.D.N.Y. 2003) .........................................................................................9

## STATUTES AND OTHER AUTHORITIES

C.P.L.R. §308.........................................................................................................................7

C.P.L.R. §403......................................................................................................................1, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
SALUS CAPITAL PARTNERS, LLC,

                                         17 CV 05536 (NRB) (KHP)
                      Petitioner,

        - against -

ANDREW MOSER,

                      Respondent.
------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO DENY CONFIRMATION OF ARBITRATION AWARD

### Preliminary Statement

Salus Capital Partners, LLC ("Salus") commenced an arbitration against Andrew Moser ("Moser"), its former President and Chief Executive Officer, contending that Moser utilized corporate assets to pay for personal expenditures in the approximate amount of $200,000.00. After Moser became ill and a hearing was held in his absence, an award was issued to Salus in the amount of $2,626,994.21. Salus then commenced this proceeding in New York State Supreme Court, New York County, to confirm the award and this proceeding was removed by Moser to this Court based on diversity.

As fully explained below, Salus' proceeding should be dismissed because it is procedurally defective. First, Salus failed to serve the Notice of Petition and accompanying documents in compliance with New York's C.P.L.R. so as to acquire jurisdiction over Moser, and Moser was not served in sufficient time prior to the return date of its Petition as required by C.P.L.R. §403. In addition, Salus' filings do not include a petition for confirmation of the award.

Thus, Salus' filings are completely defective precluding this Court's ability to confirm the award.

Further, as also explained below, the award should not be confirmed because the arbitrator exceeded his power in awarding attorney's fees and costs to Salus because in language that could not be clearer the governing arbitration agreements specifically provide that each party shall be responsible for its own attorney's fees and costs in any arbitration that is commenced.  In addition, the arbitrator's award requiring Moser to disgorge all of his income paid by Salus from June 2014 based on the faithless servant doctrine was also outside the arbitrator's power under New York law.  Finally, the award in excess of $2.5 Million is so disproportionate to the approximately $200,000.00 in controversy as to require vacatur.

Accordingly, this proceeding should be dismissed because Salus improperly commenced it without a petition and failed to timely and properly serve Moser.  Alternatively, this Court should not confirm the award because it was rendered outside the authority of the arbitrator, and is grossly disproportionate to the amount in controversy.

**Background and Facts**

A.      Relationship of the Parties and Nature of Controversy

In or about November 2011, Moser was hired as President and Chief Executive Officer of Salus, a commercial lending firm substantially owned by the HRG Group, Inc. ("HRG").  Salus and Moser entered into an employment agreement in November of 2011 and later amended as of August 26, 2014 ("Employment Agreement", Exhibit A to the Declaration of E. Christopher Murray dated July 27, 2017, "Murray Declaration").  Moser and others also entered into a Limited Liability Company Agreement effective as of December 1, 2011 ("LLC Agreement", Exhibit B to the Murray Declaration).

The Employment Agreement provides in relevant part:

17. Arbitration.

  a. **Employee and Company agree to arbitrate any controversy or claim arising out of this Agreement or otherwise relating to Employee's employment by Company or the cessation of such employment for any reason** (including, but not limited to, disputes over compensation, bonuses or the award, vesting, or repurchase of equity interests in Company pursuant to Company's Operating Agreement, or the making or amount of distributions relating such equity interests; any claim of breach of contract or wrongful termination; any claims of age, sex, race, disability or other discrimination or retaliation pursuant to the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990); any claims arising any federal, state or local wage payment statutes, rules or regulations; any claims arising any federal, state or local statutes, rules or regulations that prohibit retaliation by an employer in response to an employee's engaging in activities protected by such statute, rule or regulation; any claims arising any federal, state or local medical or family leave, military service, or jury service statutes, rules or regulations; or any other applicable federal, state or local law).

  b. Any controversy or claim described in Section 17(a) shall be fully and finally resolved in confidential, binding arbitration to the fullest extent permitted by law.  Such arbitration proceeding shall take place in the State of New York, City of New York, before a single arbitrator in accordance with the National Rules for Resolution of Employment Disputes ("Employment Rules") of the American Arbitration Association ("AAA") or any rules issued by the AAA to replace or revise the Employment Rules.  The arbitrator may grant specific performance in addition to monetary damages.  **Notwithstanding any provision of the Employment Rules to the contrary, Employee and Company shall each be responsible for paying its or her attorney's fees and costs in such arbitration to the fullest extent permitted by law.**  The arbitrator's award shall be final and binding upon the parties.

  c. Notwithstanding the foregoing, Company shall have the right to, and be permitted to, seek and obtain interim injunctive relief from a court of competent jurisdiction to enforce Section 5 and Section 6 of this Agreement pending a final judgment confirming a final arbitration award.

> d.      If any portion of this arbitration provision is determined by a court of competent jurisdiction to be unenforceable, such determination will not affect the remainder of this arbitration provision.  If, however, a court of competent jurisdiction determines that a party's claim is not arbitrable, then the parties waive, to the fullest extent permitted by law, their right, if any, to a trial by jury of any such claim arising out of or in connection with this Agreement, Employee's employment by Company, or the termination of such employment by Employee or by Company. (emphasis supplied)

The Employment Agreement also states in paragraph 16:

> 16.  Remedies.  If any of the parties to this Agreement **seeks judicial enforcement** of its or Employee's rights under this Agreement, the prevailing party in any such action shall be entitled to recover its or Employee's costs incurred in such action, including reasonable attorneys' fees. (emphasis supplied)

The LLC Agreement contains a similar arbitration provision, providing:

> Section 10.2  Arbitration.  (a) **Each of the Members agrees to arbitrate any controversy or claim arising out of this Agreement or otherwise relating to the Members' Interests.**
>
> (b)  Any such controversy or claim shall be fully and finally resolved in confidential, binding arbitration to the fullest extent permitted by law.  Such arbitration proceeding shall take place in the State of New York, City of New York, before a single arbitrator in accordance with the applicable Rules of the American Arbitration Association ("AAA").  The arbitrator may grant specific performance in addition to monetary damages.  The arbitrator shall not have the authority to modify or change any of the terms of this Agreement.  **Notwithstanding any provision of the Rules of the AAA to the contrary but subject to Section 10.15, each Member shall each be responsible for paying its or his attorney's fees and costs in such arbitration to the fullest extent permitted by law.**  The arbitrator's award shall be final and binding upon the parties.
>
> (c)  If any portion of this arbitration provision is determined by a court of competent jurisdiction to be unenforceable, such determination will not affect the remainder of this arbitration provision.  If, however, a court of competent jurisdiction determines that a party's claim is not arbitrable, then the parties

waive, to the fullest extent permitted by law, their right, if any, to a trial by jury of any such claim arising out of or in connection with this Agreement or each Member's Interest. (emphasis supplied)

Further, Sections 3.5(d) and 10.15 of the LLC Agreement state:

(d)  Each Member shall defend and indemnify the Company and the other Members against, and shall hold it and them harmless from, any damage, loss, liability, or expense, including reasonable attorneys' fees, as and when incurred, in connection with or resulting from such indemnifying Member's or its Affiliates' fraud, willful misconduct or willful misapplication or willful misappropriation of funds.

*          *          *

Section 10.15  Cumulative Remedies; Prevailing party. The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive its right to use any or all other remedies.  Said rights and remedies are given in addition to any other rights the parties may have by law or otherwise.  If any Member seeks judicial enforcement of its rights under this Agreement, the prevailing party in any such action shall be entitled to recover its costs incurred in such action, including reasonable attorneys' fees.

As set forth in Moser's accompanying Declaration dated July 27, 2017 ("Moser Declaration"), a contentious relationship developed between Moser and HRG after Salus' co-founder Philip Falcone abruptly resigned as HRG's CEO and Chairman and was replaced by Omar Asali.  As a result, on or about April 24, 2015, Moser was terminated as President and Chief Executive Officer of Salus "without cause".  As set forth in the Moser Declaration, his termination was later reclassified as for cause.

B.      Arbitration Proceeding

On or about September 11, 2015, Salus initiated this Arbitration with the American Arbitration Association ("AAA").  Salus asserted that while Moser was employed by Salus he

had converted corporate funds by using them for personal use such as taking unauthorized trips on Salus' corporate jet and purchasing patio furniture for his home. A copy of the Demand for Arbitration is attached as Exhibit C to the Murray Declaration. On October 13, 2015, Moser answered Petitioner's Demand for Arbitration and filed counterclaims. A copy of Moser's Answer to Demand for Arbitration is attached as Exhibit D to the Murray Declaration.

As set forth in the Moser Declaration, during the arbitration proceeding Moser became ill including having his gallbladder removed and being treated for an aorta aneurism. Further, because Salus did not pay Moser the compensation due him, Moser's attorney withdraw from representing him. Moser attempted to obtain new counsel but was physically unable to appear at the arbitration hearing although he eventually retained new counsel who submitted affidavits and documents  post-hearing.

One of the affidavits was from Robert Kuppens, Salus' former Chief Financial Officer. (Kuppens Affidavit, Exhibit E to the Murray Declaration). Kuppens was prepared to testify at the hearing, but at the last minute he was told by Salus' counsel his testimony would not be needed. As set forth in the Kuppens Affidavit, Salus knew of the expenditures by Moser that were at issue during the arbitration and although approximately $110,000.00 were for personal expenses, Moser was going to pay Salus back and only used the Salus Corporate American Express card to increase the frequent flier points available to Salus which were contributed to charity.

C.    Award

Prior to the arbitration hearing Moser's counterclaims were dismissed without prejudice.

The arbitrator then issued a "Partial  Final Award" (Exhibit F to the Murray Declaration) finding that Moser had, in fact, used corporate resources for personal use such as purchases at

gas stations, coffee shops, grocery and liquor stores, as well as the use of the corporate jet. The arbitrator awarded $224,395.51 to Salus for the personal expenses incurred by Moser.

In addition, the arbitrator awarded the amount of $748,155.49 which were legal fees and costs paid to the law firm Skadden, Arps, Slate, Meager & Flom LLP ("Skadden") and AlixPartners to investigate Moser's alleged improper use of approximately $200,000.00 of corporate resources which investigation was presented in the arbitration.

Further, in the "Partial Final Award" the arbitrator indicated that Moser had to disgorge any income he had earned from Salus from June 2014 until his last payment, purportedly based on the *faithless servant* doctrine under New York law. Salus was also awarded $360,124.08 in attorney's fees and $66,622.35 for costs for the arbitration, as well as interest.

A Final Award was then issued on April 17, 2017, which included an amount of $879,514.02 representing the income paid to Moser from June 2014 (Exhibit G to the Murray Declaration, collectively with Partial Final Award, the "Award").

## ARGUMENT

## POINT I

### THIS PROCEEDING SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY DEFECTIVE

C.P.L.R. §403 requires that the notice of petition and petition be served at least eight (8) days before the specified return date. C.P.L.R. §403 also requires that the notice of petition and supporting papers be served in the same manner as a summons. C.P.L.R. §308 allows for service of a summons by delivering to an individual of suitable age and discretion at the actual residence of the individual to be served, and then mailing the summons to the address by first class mail. Service is then complete ten (10) days after filing of an affidavit of service.

Here, the notice of petition and supporting papers were delivered to Moser's son and then sent first class mail.  However, an affidavit of service was never filed.  Accordingly, Salus never completed service so as to obtain jurisdiction over Moser.  *Matter of Country Wide Ins. Co. v. Polednak*, 114 A.D.2d 754, 494 N.Y.S.2d 709 (1st Dep't 1985) (proceeding dismissed where no jurisdiction was acquired over respondent).  Further, service was not made at least eight (8) days prior to the return date.  In fact, no petition at all was served.  Accordingly, Moser's motion to dismiss this proceeding should be granted.  *See Fairhaven Apts. No. 6 v. Frances Dolan*, 72 Misc.2d 590, 592, 339 N.Y.S.2d 787, 789 (Dist. Ct. Suffolk Cty. 1972) ("the return date of the notice of petition was only nine (9) days after filing [proof of service...  Hence] ... there is a basic lack of jurisdiction").

## POINT II

### THIS COURT SHOULD NOT CONFIRM THE ARBITRATION AWARD BECAUSE IT EXCEEDED THE ARBITRATOR'S AUTHORITY

A.    Attorney's Fees and Arbitration Costs

In language that could not be clearer, Section 17 of the Employment Agreement and Section 10.2 of the LLC Agreement, which constitute the applicable arbitration agreements, expressly provide "Employee and Company shall each be responsible for paying its or her [sic] attorney's fees and costs" in arbitration.  Yet, despite this provision, the arbitrator awarded attorney's fees and costs to Salus.  The arbitrator clearly exceeded his authority.

"Since the traditional American rule is that attorneys' fees are generally not awarded, and the arbitrators may decide only issues submitted for arbitration, the burden is on [the party seeking such fees] to demonstrate that an award of attorneys' fees was included within the scope of the arbitrable issues." *Sammi Line Co., Ltd. v. Altamar Navegacion S.A.*, 605 F. Supp. 72

(S.D.N.Y. 1985) (vacating the award of attorneys' fees where the arbitration provision was silent on the issue). *See also Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp.2d 670 (S.D.N.Y. 1998) (arbitrator manifestly disregarded New York law by awarding attorneys' fees where there was no attorney fee shifting language in the arbitration provision).

Here, the arbitrator simply ignored Section 17 of the Employment Agreement and instead relied on Section 16 of the Employment Agreement to support the award of attorney's fees. However, Section 16, by its terms, only applies to judicial proceedings. Accordingly, Section 16 does not govern the scope of the arbitration, Section 17 does, and Section 17 prohibits an award of attorney's fees in arbitration.

The arbitrator also relied on Section 3.5(d) of the LLC Agreement to justify the award of attorney's fees. However, Section 3.5(d) is a general indemnification and does not address arbitration. Section 10.2(d) of the LLC Agreement is specific as to the power of an arbitrator, and expressly precludes the award of attorney's fees or costs in an arbitration. *See Alstom v. Gen. Elec. Co.*, 228 F. Supp.3d 244, 249-50 (S.D.N.Y. 2017) (When an agreement "includes two dispute resolution provisions, one specific (a valuation provision) and one general (a broad arbitration clause), the specific provision will govern those claims that fall within it"); *Travelers Indem. Co. of Ill. v. F & S London Pub. Inc.*, 270 F. Supp.2d 330, 334 (E.D.N.Y. 2003) ("Where there is inconsistency between a specific provision of a contract and a general provision of a contract … the specific provision governs").

In addition, under New York law (which governs the Employment Agreement) and under Delaware law (which governs the LLC agreement), a typical indemnification agreement does not authorize an award of attorneys' fees and costs. If the parties intend to cover such fees and costs, that intention must be extremely clear. As New York Appellate Division held in *Gotham*

*Partners, L.P. v. High River Ltd. P'ship*, 76 A.D.3d 203, 208, 906 N.Y.S.2d 205, 207 (1st Dept. 2010), "[f]or an indemnification clause to serve as an attorney's fee provision with respect to disputes between the parties to the contract, the provision must *unequivocally* be meant to cover claims between the contracting parties rather than third-party claims."   Under this test, the party seeking to recover attorney's fees must establish an "unmistakable intention" by the parties to permit recovery of attorney's fees in a suit between the contracting parties. "[T]he intention to authorize an award of attorney's fees to the prevailing party in such circumstances must be virtually inescapable." *Id.* at 209.  Delaware law, which governs the LLC Agreement, follows a similar rule and strictly construes indemnification provisions.[1]

Here, Section 3.5(d) is a typical third-party indemnification provision without any instructions as to the payment of attorneys' fees and costs for disputes **between** the parties. Even if there was not a provision within the same agreement that expressly prohibited awarding attorneys' fees like Section 17 in the LLC Agreement, Section 3.5(d) would still not satisfy the *Hooper* test, or related Delaware law that the provision must be unequivocally meant to cover claims between the contracting parties, rather than third-party claims. Given Section 17 expressly prohibiting such awards, it is clear that the arbitrator's reliance on Section 3.5(d) to award fees and costs was unwarranted and outside the scope of his authority.

---

[1]   "Delaware law requires indemnification clauses to be clear and unequivocal—'if a contrary intent can reasonably [be] entertained, the Court will rule against indemnification.'" *DRR, L.L.C. v. Sears, Roebuck and Co.*, 949 F. Supp. 1132, 1143 (D. Del. 1996) (citation omitted). "Indemnification provisions are construed narrowly under Delaware law to cover claims by third parties but not claims as between the contracting parties." *HealthPro Bioventures, LLC v. Prometic Life Sciences Inc.*, No. 10 Civ. 3295, 2011 WL 5419706*11, (S.D.N.Y. Nov. 8, 2011); *see also Oliver B. Cannon and Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1165 (Del. Sup. Ct. 1978) ("[a]s we read the indemnity clause, it is a kind commonly found in construction contracts and is intended to protect the [contracting parties] from suits brought by third parties … it normally contemplates the need to defend against [t]hird party claims as opposed to claims among contracting parties [v]is-a-vis each other").

Accordingly, the circumstances here are even stronger here than in *Sammi Line Co., Ltd.*

*v. Altamar Navegacion S.A.*, 605 F. Supp. 72 (S.D.N.Y. 1985) and *Asturiana De Zinc Marketing,*

*Inc. v. Lasalle Rolling Mills, Inc.*, 20 F. Supp.2d 670 (S.D.N.Y. 1998), where the Courts vacated

attorneys' fees awards and costs because the arbitration agreement was silent on the issue. Both

the Employment Agreement and the LLC Agreement expressly prohibit such awards and provide

that the parties shall bear their own attorney's fees and costs. As the subject agreements contain

explicit language prohibiting awards of attorneys' fees and costs, the indemnification clause

cannot be the basis to award attorney's fees. Accordingly, the arbitrator did not have authority to

issue an award that included recovery of attorneys' fees and costs of the arbitration, and the

arbitrator awarding attorney's fees and costs to Salus for the arbitration should be vacated. *See*

*also Matter of Stewart Tabori & Cheng, Inc. (Stewart)*, 282 A.D.2d 385, 386, 723 N.Y.S.2d 492,

494 (1st Dep't 2001) (When an arbitrator awards attorney's fees and disbursements "not

authorized by the parties' agreement or by a statute or court rule, contrary to New York law,

which the parties had expressly chosen to govern their agreement.  That aspect of the award was

… correctly vacated" [citations omitted]); *Matter of Loiacono v. Nassau Community College*,

262 A.D.2d 485, 692 N.Y.S.2d 113 (2d Dep't 1999) (arbitration award vacated because the

arbitrator found that the petitioner was still employed during the 1995-1996 winter term when it

was clear he was not).

B.     Attorney's Fees for Investigation

Similarly, the awarding to Salus of $748,155.49 in legal fees charged by Skadden, Arps,

Slate, Meagher & Flom LLP ("Skadden") and AlixPartners was also improper.  As set forth in

the governing agreements, "any controversy or claim" between Salus and Moser is subject to

arbitration, and each party is responsible for its own legal fees and costs.  Salus cannot avoid this

contractual provision by just labeling the fees paid to Skadden and AlixPartners as an investigation because it was an investigation related to a "controversy or claim" between Salus and Moser, and is subject to the arbitration clauses in the relevant agreements.

The arbitrator, by awarding the fees and costs incurred to investigate Salus' claims against Moser which would be subject to arbitration, denied Moser the contractually provided limitation on an arbitrator's authority.  The parties very specifically agreed that an arbitrator would not have the authority to award fees and costs, and by doing so here -- awarding more than $1.0 Million in attorneys' expenses for a claim concerning $200,000.00 -- the arbitrator exceeded his authority.  *See e.g. Kowaleski v. New York State Department of Correctional Services*, 16 N.Y.3d 85, 190, 917 N.Y.S.2d 82, 86 (2010) (award may be vacated if it "exceeds a specifically enumerated limitation on the arbitrator's power"); *Chevron U.S.A. Inc. v. Consol. Edison Co. of N.Y. Inc.*, 872 F.2d 534, 537-38 (2d Cir. 1989) ("even a narrow arbitration clause must be construed in light of the presumption in favor of arbitration", although "the court is not free to disregard the explicit boundaries set by the agreement").

C.     Disgorgement of Compensation

There is no New York authority that permits disgorgement of all income based on utilizing corporate assets for personal expenditure.  The arbitrator stretching the *faithless servant* doctrine to require such disgorgement would mean that any meal charged to a corporate credit card when there was no business purpose could subject an employee to forfeit all of his or her income.  New York law clearly does not sanction such a harsh result.

New York's *faithless servant* doctrine arises from situations where an employee diverts business or business opportunities from his employer for personal benefit.  New York's Court of Appeals, in *Murray v. Beard*, 102 N.Y. 505 (1886), established this doctrine when an agent

personally bid on a contract when he should have been acting on behalf of his principal.  Further, in order to justify the forfeiture of all income, the unfaithful conduct cannot be "isolated" incidents, but must be part of a "persistent pattern of disloyalty".  *Bon Temps Agency, Ltd. v. Greenfield*, 212 A.D.2d 427, 428, 622 N.Y.S.2d 709, 710 (1st Dep't 1995).  In addition, the disloyal acts have to interfere with the employee's carrying out his duties. *Schwartz v. Leonard*, 138 A.D.2d 692, 526 N.Y.S.2d 506 (2d Dep't 1988) (an attorney/employee looking for office space and moving files to set up own practice not sufficient to require the return of payments made to him during that time period).

Here, there is no suggestion that Moser did not fulfill his duties as President and Chief Executive Officer while he was employed by Salus.  The alleged improper personal expenditures were known to Salus and, in any case, were sporadic and isolated.  The arbitrator's applying the *faithless servant* doctrine to order disgorgement of all compensation earned by Moser is far beyond anything permitted by law.  *See e.g. G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 840 N.Y.S.2d 378 (2d Dep't 2007) *aff'd*, 10 N.Y.3d 941, 862 N.Y.S.2d 855 (2008) (in context of agency forfeiture of compensation limited to transaction where agent has been disloyal).

Although the arbitrator cited cases where a disloyal employee has forfeited compensation based on an employee stealing funds, those cases have involved persistent patterns of disloyalty.  *See e.g. City of Binghamton v. Whalen*, 141 A.D.3d 145, 32 N.Y.S.3d 727 (3d Dep't 2016) (employee forfeits salary earned over six year period employee was stealing from employer).  Here, there were periodic expenditures by Moser for items that were allegedly personal yet done with the knowledge of Salus' CFO.  During this period, Moser performed his duties until he was terminated.  The arbitrator, by applying the *faithless servant* doctrine to this dispute, exceeded his authority and should be vacated. *See also Matter of Local 342 v. Town of Huntington*, 52

- 13 -

A.D.3d 720, 860 N.Y.S.2d 607 (2d Dep't 2008) (award upholding termination of employment

based on wrongful actions not related to employment was irrational and vacated).

## POINT III

### THE AWARD IS SO DISPROPORTIONATE FROM THE AMOUNT IN CONTROVERSY SO AS TO PRECLUDE CONFIRMATION

This dispute arose over Moser's alleged misuse of $200,000.00 of corporate funds for

personal expenses over an approximately two year period.  The awarding of in excess of

$2,500,000.00 is so disproportionate to the amount in controversy that it shocks one's

consciousness and was outside the scope of the arbitrator's authority.  In essence, the Award is

so disproportionate as to improperly be punitive against Moser.

While Courts under both New York law and the Federal Arbitration Act must give

deference to the arbitrator's determination, a Court does not have to confirm awards that are

**grossly disproportionate** to the issues before the arbitrator.  For example, in *Sawtelle v.

Waddell & Reed, Inc.*, 304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dep't 2003), New York's

Appellate Division vacated that portion of an award granting punitive damages of $25 Million

when that amount violated the legal requirement that punitive damages had to be proportionate to

compensatory damages.

Similarly, the New York Court of Appeals, in *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354,

386 N.Y.S.2d 831 (1976) refused to confirm an arbitration award containing punitive damages

where the applicable contract gave the arbitrator broad authority.  The Court of Appeals held that

the inclusion of punitive damages in the award violated public policy and vacated the award.

Here, the amount of the Award is over ten times the amount of alleged personal

expenditures made by Moser.  Such an award is clearly punitive and should not be confirmed.

**Conclusion**

For the reasons set forth above, and in the accompanying Declaration of E. Christopher

Murray, and all prior pleadings and proceedings had herein, this proceeding should be dismissed,

or alternatively, this Court should deny confirmation of the award.


Dated: Uniondale, New York
      July 27, 2017

                                 RUSKIN MOSCOU FALTISCHEK P.C.

                By: _____
                          Jeffrey A. Wurst
                          E. Christopher Murray
                          Ross  J. Kartez
                          *Attorney for Defendant*
                          East Tower, 15th Floor
                          1425 RXR Plaza
                          Uniondale, New York  11556
                          (516) 663-6600

703019v2

- 15 -