# BROOKS EXHIBIT 5

1

VOLUME 1 OF 2

PAGES 1-288

AMERICAN ARBITRATION ASSOCIATION

EMPLOYMENT ARBITRATION

CASE 01-15-0004-9758

```
------------------------------
                             )
SALUS CAPITAL PARTNERS, LLC   )
                             )
          Claimant,           )
                             )
             vs.              )
                             )
ANDREW MOSER                  )
                             )
          Respondent.         )
                             )
------------------------------
```

Arbitration taken on behalf of the
Claimant, before June Poirier, Shorthand Reporter,
on Wednesday, October 5, 2016, at the law offices of
Libby Hoopes, P.C., 399 Boylston Street, Boston,
Massachusetts, commencing at 9:00 a.m.

2

1  APPEARANCES:

2  ALFRED G. FELIU - ARBITRATOR

3  DOUGLAS S. BROOKS, ESQ.

   KRISTEN A. KEARNEY, ATTORNEY

4  Libby Hoopes, P.C.

   399 Boylston Street

5  Boston, MA 02116

   (617)338-9300

6  dbrooks@libbyhoopes.com

   kkearney@libbyhoopes.com

7      For the Claimant

8  BRENDAN DOYLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3

```
1                   I N D E X

2   WITNESS              DIRECT    CONTINUED DIRECT

3   BRENDAN DOYLE

4      By Mr. Brooks        12              200

5   JAMES SHAPIRO

6      By Mr. Brooks        118

7   JACQUELINE BAMMAN

8      By Ms. Kearney       161

9   KYLE SHONAK

10     By Ms. Kearney       176

11  ALEXANDER BOURDONY

12     By Ms. Kearney       190

13

14

15     * EXHIBITS ARE AS MARKED IN THE TRANSCRIPT *

16

17

18

19

20

21

22

23

24
```

4

1                        PROCEEDINGS

2          ARBITRATOR FELIU:  Good morning, all.

3    This is the first day of the Salus versus Moser

4    matter.  It is a fact that Mr. Moser is not

5    present and we have reason to believe that he

6    will not be appearing based on a call that

7    Mr. Brooks received last night from someone

8    purporting to be speaking for him, if not

9    representing him; is that correct?

10          MR. BROOKS:  That's correct.  Attorney Van

11    Dam, for the record.

12          ARBITRATOR FELIU:  And Mr. Van Dam is the

13    person you indicated you had a personal

14    relationship with and trusted his

15    representation?

16          MR. BROOKS:  I do.  I've known Michael Van

17    Dam probably since I was 12 and he was 8 so

18    I've known him a long time.

19          ARBITRATOR FELIU:  That is a long time.

20    There is a long procedural history that goes

21    with this matter.  In an effort to efficiently

22    address and recognize that history I've

23    suggested to Mr. Brooks that there are existing

24    documents that have been submitted as parts of

5

1     this process that I would like to have part of

2     the record as Arbitrator exhibits.  I have

3     suggested, for example, that there is a motion

4     to renew the request for a continuation, I

5     believe, or something similarly named.  Both

6     the motion and the opposition papers by Mr.

7     Brooks lays out quite fully and accurately

8     matters related to this arbitration, various

9     adjournments that were granted, various

10    requests by Mr. Moser for accommodations due to

11    his health and otherwise, so I would like to

12    admit those as perhaps Arbitrator 1 and

13    Arbitrator 2, as well as an order that was

14    issued resulting from that motion and that

15    order was dated June 17th.

16         There was without -- trying to expedite

17    here a little bit, the scheduling of this

18    arbitration was initially discussed in June at

19    which point Mr. Moser was still represented and

20    notice was provided to Mr. Moser through his

21    counsel that we were anticipating a September

22    hearing; at that point Mr. Moser's counsel

23    withdrew from representing him.  There was a

24    subsequent call with Mr. Moser in July where

6

1    once again we reaffirmed, set these particular

2    specific dates for the hearing.  Mr. Moser

3    indicated that he was seeking counsel and he

4    was given a reasonable opportunity to find

5    counsel.

6         On Monday of this week we, the AAA -- not

7    the AAA initially -- Mr. Brooks and myself were

8    notified by a representative from the firm of

9    Bletzer & Bletzer, it's B-L-E-T-Z-E-R, that,

10   and I quote, that Mr. Moser is in the process

11   of retaining Attorney Conrad Bletzer, close

12   quote, and that they anticipate filing a notice

13   of appearance within the next couple days.  I

14   scheduled a call with counsel, including

15   Mr. Bletzer, on October 4th, yesterday, and Mr.

16   Bletzer appeared along with Mr. Brooks and I

17   guess Mr. Doyle as well.  During that call I

18   confirmed that Mr. Bletzer had not yet been

19   retained but anticipated being retained by

20   Thursday of this week, namely two days into the

21   scheduled hearing.  He requested a 90-day

22   adjournment which would have been the third

23   adjournment of this hearing and I declined to

24   grant that request as being untimely.

7

1          And, Mr. Brooks, is that accurate to your

2     recollection?

3          MR. BROOKS:  That is accurate.

4          ARBITRATOR FELIU:  Is there anything else

5     you would like to add?

6          MR. BROOKS:  I think maybe perhaps as

7     Arbitrator Exhibit 3, which we can introduce

8     later, I have notices from AAA that went to

9     Mr. Moser, most of these went both by e-mail

10    and certified mail to his home giving him

11    notice of these hearing dates, one is dated

12    July 27th, 2016; one August 19, 2016.  There

13    were two separate ones sent on September 8,

14    2016; one on September 23rd, 2016.  I believe

15    that one was after we had picked this location

16    so it specifically mentioned that the

17    arbitration would take place here, and finally

18    yesterday on October 4th, 2016 saying the

19    arbitration would take place here.

20          Over the past week I've had three or four

21    telephone conversations with Attorney Michael

22    Van Dam where we -- at least in two or three of

23    those we specifically discussed both the date

24    of the arbitration and the location of the

8

1    arbitration.  As Miss Kearney reminds me,

2    thinking that this would likely occur we also

3    subpoenaed Mr. Moser and so maybe it makes

4    sense at some point to introduce the return of

5    service of the subpoena knowing that he was

6    under subpoena to be here.

7         ARBITRATOR FELIU:  I think that would be

8    appropriate.  And just a few more additions.

9    There were also at least two calls scheduled,

10   management calls scheduled with me and counsel

11   and the parties after the July -- June --

12        MR. BROOKS:  July 26.

13        ARBITRATOR FELIU:  -- July 26 call in

14   which Mr. Moser participated.  Mr. Moser was

15   given proper notice of those phone calls, he

16   did not participate.  I would also note that

17   there were numerous attempts to take his

18   deposition starting probably in March through

19   September and Mr. Moser declined and failed to

20   appear for those depositions.  And I note that

21   at least with respect to the last one you had a

22   court reporter present on September 19th and

23   Mr. Moser once again failed to appear.

24        Finally, I said before and let me note

9

1    that the prehearing memorandum that I received

2    from Claimants the first five pages recites

3    accurately part of the history that we just

4    recited and for that purpose I would be

5    receptive to receiving those pages as

6    Arbitrator exhibit.  The rest is argument and

7    I'm not accepting that as an exhibit but since

8    it does reflect, and my recollection is the

9    same, I think might be an efficient way to

10   proceed with respect to those data points.

11   Anything further, Mr. Brooks?

12        MR. BROOKS:  Two, I suppose -- well, one

13   related issue, just a preliminary thing, and

14   one later and we can figure out if you want

15   anything in writing.  Due to his failure to

16   appear we believe that we would be entitled to

17   an adverse inference under New York law and if

18   you are so inclined we would submit briefing on

19   that.

20        ARBITRATOR FELIU:  I'll accept briefing on

21   it.  I will say that the fact that a party

22   doesn't appear does not eliminate the burden of

23   proof the party has to prove their case.

24   Adverse inference for a variety of different

 AMERICAN ARBITRATION ASSOCIATION INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

Northeast Case Management Center
Heather Santo
Assistant Vice President
950 Warren Avenue
East Providence, RI 02914
Telephone: (866) 293-4053
Fax: (866) 644-0234

July 27, 2016

Douglas S. Brooks
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
Via Email to: dbrooks@libbyhoopes.com

Andrew Moser
12 Dover Drive
Walpole, MA 02081
Via Mail

Case Number: 01-15-0004-9758

Salus Capital Partners, LLC
-vs-
Andrew Moser

Dear Parties:

This will confirm a management conference in the above matter was held on July 26, 2016. The scheduling order established during the management conference is as follows:

1. Mr. Moser has indicated that he is unable at this time to pay his portion of the fees related to this proceeding. Claimant will confirm by on or before September 8, 2016 whether it intends to proceed with this arbitration.
2. Mr. Moser has further indicated that he is seeking new counsel. Should new counsel be retained, such counsel is directed to promptly provide a notice of appearance to the Case Manager.
3. A further telephone management conference is scheduled for September 8, 2016 at 11:00 am (please note time change).
4. The deposition of Mr. Moser will be conducted on or before September 19, 2016.
5. The hearing in this matter is scheduled for October 5-7, 2016, pursuant to the enclosed Notice of Hearing. The expectation is that the hearing will be held in Boston, Massachusetts.

We ask the parties to notify the American Arbitration Association of a mutually agreeable location on or before September 14, 2016.

Please note: The American Arbitration Association does not require hard copies of submissions or exhibits for our file. This case will be administered by facilitating the exchange of appropriate written documents through the AAA. Please submit all correspondence to the undersigned for transmittal to the arbitrator, copying the other party.



EXHIBIT
Arbitrator's
Ex. 1

**Douglas Brooks**

| From: | AAA Michele Gomez <MicheleGomez@adr.org> |
| Sent: | Friday, August 19, 2016 9:19 AM |
| To: | Douglas Brooks; ahmharborside@gmail.com; Cara Murphy; afeliu@feliuadr.com |
| Subject: | RE: Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758 |

Good Morning:

This will confirm the hearing is from October 5 – 7, 2016.



**AAA Michele Gomez**
**Manager of ADR Services**

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Douglas Brooks [mailto:dbrooks@libbyhoopes.com]
**Sent:** Thursday, August 18, 2016 2:15 PM
**To:** AAA Michele Gomez; ahmharborside@gmail.com; Cara Murphy; afeliu@feliuadr.com
**Subject:** FW: Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758

Thank you Michele. I just note that the Arbitration had been scheduled to start on October 5, not October 3. Can you confirm that this is AAA's understanding as well?

Thank you.

Best,
Doug

**From:** MicheleGomez@adr.org [mailto:MicheleGomez@adr.org]
**Sent:** Thursday, August 18, 2016 1:40 PM
**To:** Douglas Brooks <dbrooks@libbyhoopes.com>; ahmharborside@gmail.com; Cara Murphy <cmurphy@libbyhoopes.com>; afeliu@feliuadr.com
**Subject:** Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

**Douglas Brooks**

| | |
|---|---|
| **From:** | AAA Michele Gomez <MicheleGomez@adr.org> |
| **Sent:** | Thursday, September 08, 2016 2:05 PM |
| **To:** | Andy Moser |
| **Cc:** | Douglas Brooks; Cara Murphy |
| **Subject:** | RE: Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758 |
| **Attachments:** | EMP020_17990577.pdf |

Good Afternoon Mr. Moser:

Thank you for your response. This morning's conference call was scheduled on July 27th per the attached letter. The call proceeded this morning with Arbitrator Feliu and counsel for Claimant. I will be issuing a summary of the call from Arbitrator Feliu shortly. Please note that the call summary will contain the dial-in information for another conference call scheduled on September 23rd at 1:30 p.m.

Regards,

Kristy Allison on behalf of

**From:** Andy Moser [mailto:ahmharborside@gmail.com]
**Sent:** Thursday, September 08, 2016 12:16 PM
**To:** AAA Michele Gomez
**Subject:** Re: Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758

Thank you for your kind note, the attachment refers to a call in August and I was unaware of any call today. I continue to seek counsel regarding this matter.

On Tuesday, August 9, 2016, <MicheleGomez@adr.org> wrote:
Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.


[Logo]
AAA Michele Gomez
Manager of ADR Services
American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org<mailto:MicheleGomez@adr.org>
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org


The information in this transmittal (including attachments, if any) is privileged and/or confidential and is

1



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

Northeast Case Management Center
Heather Santo
Assistant Vice President
950 Warren Avenue
East Providence, RI 02914
Telephone: (866) 293-4053
Fax: (866) 644-0234

## AMERICAN ARBITRATION ASSOCIATION
Notice of Hearing

July 27, 2016

Douglas S. Brooks
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
Via Email to: dbrooks@libbyhoopes.com

Andrew Moser
12 Dover Drive
Walpole, MA 02081
Via Mail

Case Number: 01-15-0004-9758
Salus Capital Partners, LLC  -vs-  Andrew Moser

PLEASE TAKE NOTICE that hearings in the above-entitled arbitration will be held as follows:

| | |
|---|---|
| Type: | Preliminary Hearing |
| Method: | Conference call |
| Date: | September 8, 2016 |
| Time: | **11:00 AM** EDT |
| Call in #: | 888-537-7715 |
| Call in code: | 26079159 |

| | |
|---|---|
| Type: | Evidentiary Hearing |
| Method: | In-Person |
| Date: | October 5-7, 2016 |
| Time: | 09:00 AM |
| Location: | To be determined by mutual agreement of the parties no later than September 14, 2016. |

NOTE: Please attend promptly with your witnesses and be prepared to present your proofs.

Michele Gomez
Manager of ADR Services
Direct Dial: (401) 431-4848
Email: MicheleGomez@adr.org

cc:   Alfred G. Feliu, Esq.

NOTICE: The arbitrator has arranged his schedule and reserved the above dates. Therefore, every effort should be made to appear on the dates scheduled. In the event that unforeseen circumstances make it impossible to attend the hearing as scheduled, a party requesting a postponement should obtain the agreement of the other party. If there is no mutual agreement, the arbitrator will make a determination. All requests for postponements must be communicated to the Case Administrator, not the arbitrator. There should be no direct communication between the parties and the arbitrator. In some instances, postponements are subject to cancellation fees by the arbitrator. Any party wishing a stenographic record must make arrangements directly with the stenographer and notify the other party of the arrangements in advance of the hearing.

**Douglas Brooks**

| | |
|---|---|
| **From:** | MicheleGomez@adr.org |
| **Sent:** | Thursday, September 08, 2016 2:45 PM |
| **To:** | Douglas Brooks; ahmharborside@gmail.com; Cara Murphy; afeliu@feliuadr.com |
| **Subject:** | Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758 |
| **Attachments:** | EMP020.pdf |

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.



**AAA Michele Gomez**
**Manager of ADR Services**

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.



AMERICAN
ARBITRATION
ASSOCIATION·

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION·

Northeast Case Management Center
Heather Santo
Assistant Vice President
950 Warren Avenue
East Providence, RI 02914
Telephone: (866) 293-4053
Fax: (866) 644-0234

September 8, 2016

Douglas S. Brooks
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
Via Email to: dbrooks@libbyhoopes.com

Andrew Moser
12 Dover Drive
Walpole, MA 02081
Via Email to: ahmharborside@gmail.com; &
Certified Mail RRR-tracking #7014 1820 0000
8780 5197

Case Number: 01-15-0004-9758

Salus Capital Partners, LLC
-vs-
Andrew Moser

Dear Parties:

This will confirm that a conference call was held on September 8, 2016. To follow please find the arbitrator's summary of the call:

"The Management conference scheduled for September 8, 2016 was held and the following matters were addressed and decided. Messrs. Brooks and Doyle appeared on behalf of Claimant. Mr. Moser did not appear and, after efforts to contact him were unsuccessful, the management conference proceeded.

1. The Arbitrator was informed that Mr. Moser did not appear for his noticed deposition. The deposition has been re-noticed for **September 19th.**
2. The Arbitrator confirmed that the hearing will proceed as scheduled on **October 5-7, 2016.** In the event that Mr. Moser does not appear for his noticed deposition, Claimant may request appropriate remedies to address this failure at the hearing.
3. Claimant has until **September 23, 2016** to determine whether to advance the fees and costs of the arbitration attributable to Mr. Moser in response to his failure to pay his portion of the assessed fees and costs.
4. A further telephonic management conference has been scheduled for **September 23, 2016 at 1:30pm.**

Alfred G. Feliu, Esq."

Per the arbitrator's summary, an additional conference call has been scheduled for **September 23, 2016 at 1:30 p.m.** Please connect to the call using the following telephone number and pass code:

**Telephone: 888.537.7715**
**Pass Code: 26079159#**

Please note that, per Employment Rule 29, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or obtain a postponement.

All deadlines shown herein will be strictly enforced. After such deadline, the parties may not file such motions except with the permission of the arbitrator, good cause having been shown.

If you have any questions, please do not hesitate to call.

Sincerely,

*Kristy Allison on behalf of*

Michele Gomez
Manager of ADR Services
Direct Dial: (401) 431-4848
Email: MicheleGomez@adr.org
Fax: (401) 435-6529


Enclosure

cc :    Alfred G. Feliu, Esq.
        Cara Murphy, Paralegal

**Douglas Brooks**

| | |
|---|---|
| **From:** | MicheleGomez@adr.org |
| **Sent:** | Friday, September 23, 2016 2:50 PM |
| **To:** | Douglas Brooks; ahmharborside@gmail.com; Cara Murphy; afeliu@feliuadr.com |
| **Subject:** | Salus Capital Partners, LLC V. Andrew Moser - Case 01-15-0004-9758 |
| **Attachments:** | EMP020.pdf; EMP051.pdf |

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.



**AAA Michele Gomez**
**Manager of ADR Services**

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

Northeast Case Management Center
Heather Santo
Assistant Vice President
950 Warren Avenue
East Providence, RI 02914
Telephone: (866) 293-4053
Fax: (866) 644-0234

## AMERICAN ARBITRATION ASSOCIATION
Notice of Hearing

September 23, 2016

Case Number: 01-15-0004-9758
Salus Capital Partners, LLC
-vs-
Andrew Moser

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Type:           Evidentiary Hearing
Method:         In-Person
Date:           October 5, 2016
Time:           09:00 AM
Place:          LibbyHoopes, P.C.
                399 Boylston Street
                Boston, MA 02116
                United States of America

Type:           Evidentiary Hearing
Method:         In-Person
Date:           October 6, 2016
Time:           09:00 AM
Place:          LibbyHoopes, P.C.
                399 Boylston Street
                Boston, MA 02116
                United States of America

Type:           Evidentiary Hearing
Method:         In-Person
Date:           October 7, 2016
Time:           09:00 AM
Place:          LibbyHoopes, P.C.
                399 Boylston Street
                Boston, MA 02116
                United States of America

NOTE: Please attend promptly with your witnesses and be prepared to present your proofs.

## Douglas Brooks

| | |
|---|---|
| **From:** | AAA Michele Gomez <MicheleGomez@adr.org> |
| **Sent:** | Tuesday, October 04, 2016 11:54 AM |
| **To:** | Kristen Kearney |
| **Cc:** | Douglas Brooks; ahmharborside@gmail.com |
| **Subject:** | RE: Salus Capital Partners, LLC v. Andrew Moser, Case No. 01-15-0004-9758 |
| **Attachments:** | Salus.pdf |

Good afternoon:

Please be advised, the arbitrator's morning call will be Thursday at 9:30am, not tomorrow.

Hearings will begin tomorrow, October 5th, at 9am at LibbyHoopes, PC, 399 Boylston Street, Boston, MA 02116. The hearings will continue on October 6th and 7th.

Enclosed is a copy of the notice of hearing.



### AAA Michele Gomez
### Manager of ADR Services

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

The Arbitration Tribunals of the
American Arbitration Association

In the Matter of the Arbitration between

SALUS CAPITAL PARTNERS, LLC

                Claimant,

and

ANDREW MOSER

                Respondent.

*Case No. 01-15-0004-9758*

**Subpoena Duces Tecum**
**(Documents & Testimony)**

FROM THE PEOPLE OF THE COMMONWEALTH OF MASSACHUSETTS

To:    Andrew H. Moser
       12 Dover Drive
       Walpole, MA 02081

GREETING:

    WE COMMAND YOU that, all business and excuses being laid aside, you and each of
you appear and attend before Arbitrator Alfred Feliu acting under the arbitration laws of the
State of New York and the Commonwealth of Massachusetts, at LibbyHoopes, P.C., 399
Boylston Street, Second Floor, Boston, MA 02116, on the 5th day of October, 2016, at 9:00
o'clock a.m., to testify and give evidence in a certain arbitration, then and there to be held
between the above entitled parties, and that you bring with you and produce certain documents
set forth in Schedule A hereto now in your custody.

Signed: _____

Requested by:  Claimant Salus Capital Partners
               Attorney Douglas S. Brooks
               LibbyHoopes, P.C.
               399 Boylston Street
               Boston, MA 02116
               (617) 338-9300

Dated: September 22, 2016

**A TRUE COPY ATTEST**

ALAN M BISHOP-CONSTABLE

**EXHIBIT**
Arbitrator's
Ex. 2

## SCHEDULE A TO SUBPOENA DUCES TECUM

### DEFINITIONS

"You" and "your" shall refer to Andrew Moser, the Respondent in this Arbitration.

### REQUESTS

1.    Your 2015 W2 from Monroe Capital.

2.    Your paystubs from Monroe Capital reflecting year-to-date pay history, including, but not limited to, any bonus payments.

3.    Your 2014 and 2015 state and federal tax returns.

4.    If your 2014 and/or 2015 state and federal tax returns have not been filed, any extensions related to those returns.

5.    All bank statements for any account on which you are an owner (individual or joint), from January 1, 2015 to the present.

6.    Copies of all cancelled checks or other proof of payments to any attorneys who have represented you in this Arbitration proceeding.

7.    All brokerage statements for any account on which you are an owner (individual or joint), from January 1, 2015 to the present.

8.    All credit card statements for any account on which you are an owner (individual or joint), from January 1, 2015 to the present.

9.    All other documents reflecting expenses incurred in 2015 and 2016.

10.    All financial documents setting forth your assets and liabilities.

11.    All documents and correspondence, including emails and text messages, concerning Scargo Asset Alliance, LLC.

12.    All documents and correspondence, including emails and text messages, concerning your claim for unemployment benefits after your employment with Salus Capital Partners, LLC ("Salus") terminated.

13.    All documents and correspondence, including emails and text messages, concerning any work that Jeremy Glassman or Jeremy Glassman's family performed for Salus.

14.    All documents and correspondence, including emails and text messages, concerning this Arbitration or any allegations and defenses related thereto.

## OFFICER'S RETURN

Norfolk        , ss.                    Walpole                        09/23/2016

I, this day, summoned the within named witness, Andrew H. Moser
to appear and give testimony at a deposition in a civil action,
SALUS CAPITAL PARTNERS, LLC. (CLAIMANT) AND ANDREW MOSER (RESPONDENT) Case 01-15-0004-9758
as within directed, by delivering to Andrew H. Moser
in hand, a true and attested copy of this attached Subpoena, together with the Schedule A,
any and all attachments, and the sum of $12.00          . being the fee for one day's
attendance and travel. Said service was made at:
12 Dover Drive, Walpole, MA 02081 at 7:50AM

Alan M. Bishop – Constable
200F Main St. STE 313,
Stoneham, MA 02180
781.605.1988

Fees for Service: $ 175.00

ALAN M. BISHOP  08-07
STREET SMART SECURITY CONSULTANTS
PH. 781-605-1988
200 F MAIN ST., STE. 313
STONEHAM, MA  03180

53-178/113

1542

DATE  9.23.2016

PAY TO THE
ORDER OF  ANDREW H. MOSEL . WITNESS FEE                      | $ 12.00

—————— TWELVE DOLLARS —————————————————————  DOLLARS

@ Eastern Bank
Boston, MA 02109
easternbank.com
1-800-EASTERN

MEMO  WITNESS FEE ON
ARBITRATION SUBPOENA

de_mi Bl

⑂01130178⑂:  06  000813554⑂"  1542

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION**

| | |
|---|---|
| SALUS CAPITAL PARTNERS, LLC<br><br>     Claimant,<br><br>v.<br><br>ANDREW MOSER<br><br>     Respondent. | Case 01-15-0004-9758 |

## CLAIMANT SALUS CAPITAL PARTNERS, LLC'S OPPOSITION TO
## RESPONDENT'S RENEWED MOTION TO CONTINUE HEARING

### I.   INTRODUCTION

Claimant Salus Capital Partners, LLC hereby opposes Respondent Andrew Moser's renewed motion to continue the hearing in this matter – **indefinitely** – because it suffers from the same fundamental defect as his original motion to continue. That is, Mr. Moser's renewed motion fails entirely to address his substantial and robust activities, which appear inconsistent with the health issues that he alleges make it impossible for him to (i) participate in the hearing in this matter, (ii) sit for a deposition or (iii) even communicate meaningfully with his attorneys such that he can complete his required document production (which to this date remains incomplete).

Specifically, while Mr. Moser has now included a note from his physician recommending that he avoid stressful situations (not surprisingly, expressly including this Arbitration), neither Mr. Moser nor his physician discuss the following: (1) in November 2015, to much fanfare, Monroe Capital hired Mr. Moser as co-head of its "new business vertical, Retail Products Asset Based Lending"; (2) in just his first six months at Monroe Capital, Mr. Moser has built a loan pipeline of $600,000,000; (3) in so doing, Mr. Moser has repeatedly traveled outside of

**EXHIBIT**
Arbitrator's
Ex. 3

Massachusetts, including trips to California, North Carolina, Texas and, most recently, Illinois; (4) while allegedly too sick to communicate with his counsel, Mr. Moser has nonetheless found time to communicate with several Salus borrowers, including at least one current Salus borrower whose loan he was looking to refinance on behalf of Monroe Capital, in order to urge such borrower to sue Salus for alleged activity that Mr. Moser himself oversaw while he worked at Salus; (5) in late April, Mr. Moser sent an email, in which he bragged about all of the deals he was bringing to the table at Monroe Capital; and (6) according to Monroe Capital's website, on June 7, 2016, just eight days before the scheduled start of the Arbitration hearing, which Mr. Moser claims he cannot attend due to health reasons, and three weeks after filing his most recent motion to continue, Mr. Moser is scheduled to travel to New York to attend the New York Institute of Credit's 97th Annual Awards Banquet.

Indeed, Mr. Moser's physician's conclusory submission fails to explain in any meaningful way why he cannot participate in this Arbitration but is able – apparently without any detrimental effects on his health – to accomplish and participate in all of the above. Based on this glaring omission, Salus respectfully suggests that the Arbitrator need not accept Mr. Moser's physician's opinion. This is especially so where the physician requests at least a six month continuance before Mr. Moser can even begin to work with counsel, without attempting to explain why such a lengthy continuance is medically necessary or appropriate.

Finally, the above-referenced inconsistencies are particularly suspect here, where, despite multiple warnings, Mr. Moser has failed to pay the required Arbitrator's fees in the amount of $17,700 ($3,000 of which became past due on April 1, 2016 and $14,700 of which became past due on May 11, 2016). In light of all of the circumstances, it seems that Mr. Moser's real intent is to stall these proceedings until at least next year, knowing full well that because of the

financial difficulties that Mr. Moser caused the company by virtue of his conduct as the company's CEO (both his theft and his general poor business decisions), Salus is in wind-down and might not be operational in 2017.[1]

## II.    BACKGROUND

In or around November 2015, Monroe Capital LLC established a new business vertical, Retail and Consumer Products Asset Based Lending. At that time, it hired Mr. Moser to co-head this new finance practice group. On November 4, 2015, Monroe Capital issued a press release to celebrate the company's hiring of Mr. Moser. *See* Exhibit A. The media blitz to promote this major business initiative continued on November 12, 2015, when ABL Advisor ran a story entitled, "Monroe Capital's Koenig & Moser Talk Retail ABL." *See* Exhibit B. A little over one month later, Bloomberg Brief interviewed Mr. Moser for an article entitled, "Monroe Capital's Moser Sees 'Plenty of Opportunity' in Retail." *See* Exhibit C.

Over the past six months, Mr. Moser has been hard at work (*e.g.*, attending industry events) attempting to bring business to Monroe Capital's new vertical. Salus is generally aware of Mr. Moser's substantial work activity, because Mr. Moser has sought to refinance the loans of a number of current Salus borrowers. *See* Affidavit of Brendan M. Doyle, Esq., attached hereto as Exhibit D. Mr. Moser's efforts in this regard have included multiple trips out of state.

For example, on February 25, 2016, Mr. Moser traveled to California to meet with current Salus borrower China Pearl. *See* Exhibit E. In this general time frame, Mr. Moser also traveled to North Carolina to meet with Salus borrower Mitchell Gold. *See* Exhibit D. Meanwhile, on February 5, 2016, Salus served a deposition notice for Mr. Moser's deposition to

---

[1]     While Salus believes this to be Mr. Moser's goal, ultimately it is a futile one. Salus has no intent to relinquish its meritorious claims against Mr. Moser in connection with his brazen theft of corporate funds.

take place in Boston on March 16, 2016. *See* Exhibit F. On March 11, 2016, just two weeks after Mr. Moser's cross-country trip to California, Mr. Moser's counsel sent an email to Salus' counsel stating that "for health-related reasons...Mr. Moser will not be available for a deposition on March 16, 2016." *See* Exhibit G. On that same day, Mr. Moser's counsel wrote to the Arbitrator to explain that "...discovery has been placed on hold due to the unavailability of our client, Andrew Moser, whom we understand has various health-related issues involving his heart, which have substantially limited his activities." *See* Exhibit H. Salus assumes that Mr. Moser's counsel was unaware of his recent cross-country travel when they sent the above correspondence.

Just last week, on May 9, 2016, Mr. Moser traveled to Chicago for Monroe Capital credit/loan committee meetings to approve the refinancing of a $30,000,000 loan to Hampshire, another Salus borrower. *See* Exhibit D. Indeed, as set forth further below, by his own account, in just six months since starting at Monroe Capital, Mr. Moser has built an impressive loan pipeline of $600,000,000. *See id.*[2]

Notably, not all of Mr. Moser's recent activities involving Salus borrowers are aimed at attempting to refinance those borrowers' loans on behalf of his new employer. For example, Mr. Moser recently called Harold Jabarian, CEO of China Pearl, and suggested that China Pearl sue Salus because at the time Salus made its loan to China Pearl (when Mr. Moser was Salus' CEO), Salus did not have a California Lenders License. *See* Exhibit I.[3] Not coincidentally, another former Salus borrower in California has threatened action against Salus over the lenders license issue. *See* Exhibit D. As the topic and details surrounding whether Salus had or needed such a

---

[2]   Salus understands that during this time frame, Mr. Moser has also traveled to Texas and had a trip scheduled to Louisiana. *See* Exhibit D.

[3]   Although not germane to this Arbitration, Salus' understanding is that such a license was not required.

license was not something that this former Salus borrower would have had any knowledge, the only reasonable inference is that this former borrower is acting at Mr. Moser's urging (during a time where Mr. Moser claims he is too sick to communicate with his own counsel).

In addition, notwithstanding the health issues that he claims prevent him from participating in this Arbitration proceeding in any way whatsoever, on April 22, 2016, Mr. Moser attended a Boston Celtics playoff game in the luxury box of the law firm Choate, Hall & Stewart, counsel with whom Mr. Moser worked while at Salus. *See* Exhibit D. Moreover, it appears that Mr. Moser has no intention of ceasing his out-of-state travel activities based on his alleged health issues. According to Monroe Capital's website (as updated today), on June 7, 2016, just eight days before the scheduled start of the Arbitration hearing and two weeks after his noticed deposition in Boston for which Mr. Moser claims he cannot appear, Mr. Moser will be traveling to New York to attend the New York Institute of Credit's 97th Annual Awards Banquet on behalf of his current employer. *See* Exhibit J.

Meanwhile, in late April 2016, Mr. Moser bragged in an email about his $600,000,000 loan pipeline at Monroe Capital. *See* Exhibit D.

### III.  ARGUMENT

Notably, Mr. Moser's renewed motion for a continuance entirely ignores all of his substantial activities in recent months, despite the fact that Salus has expressly raised this issue several times in opposition to Mr. Moser's repeated requests to postpone his deposition and seek an indefinite continuance of the Arbitration hearing. This silence is telling and should be deemed a tacit admission that all of Salus' statements concerning Mr. Moser's level of activity are true (and, of course, Salus only knows a fraction of the extent of Mr. Moser's actual level of activities).

5

Moreover, Mr. Moser's physician also fails entirely to address his substantial activity in recent months. The physician's ultimate conclusion that Mr. Moser not participate in "any active work with counsel or other professionals engaging in dispute resolution or activities in nature" therefore lacks credibility because it is unclear whether the physician is aware of all (or, indeed, any) of the relevant circumstances.

As a whole, the physician's letter lacks any meaningful medical opinion justifying the requested continuance. The letter simply concludes that participating in "any formal dispute resolution" "would be detrimental to Mr. Moser's health." Again, given Mr. Moser's level of activity in the workplace, this conclusory statement lacks any support and therefore should carry no weight. Perhaps the most problematic aspect of the physician's letter is that it asks for "at least" a six month period before Mr. Moser should even begin to "work with counsel" in this matter, but it does not attempt to explain why such a substantial continuance is necessary (even assuming that any continuance would be appropriate).

In sum, the physician's letter simply founders when juxtaposed to Mr. Moser's substantial activities outside of this Arbitration. Mr. Moser's renewed motion for a continuance should therefore be denied.

Based on all of the above, Salus regretfully has come to the conclusion that Mr. Moser's true motive here is financial. He appears intent to avoid paying his share of the Arbitrator's fees and hopes that with a sufficiently lengthy continuance, Salus will abandon its meritorious claims against Mr. Moser for stealing company funds.

To the extent that Mr. Moser's share of the Arbitrator's fees remain unpaid, Salus intends to move to dismiss Mr. Moser's counterclaims and seek guidance from the Arbitrator on its options in prosecuting its affirmative claims against Mr. Moser.

IV.    **CONCLUSION**

For the foregoing reasons, Salus respectfully requests that the Arbitrator DENY Mr.

Moser's motion to continue.

Respectfully submitted,

SALUS CAPITAL PARTNERS, LLC

By its attorneys,

Douglas S. Brooks
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
(617) 338-9300
dbrooks@libbyhoopes.com

Dated:  May 19, 2016

7

# EXHIBIT A

5/17/2016                    Monroe Capital Establishes a Retail and Consumer Products Asset Based Lending Group | Monroe Capital LLC

 **Monroe Capital**
*Innovative Capital Creating Value*



Chicago    New York    Los Angeles    San Francisco

Atlanta    Boston    Charlotte    Dallas    Toronto

| Home | About Us | Industry Verticals | Transaction Types | Management Team | Investments | News | Investor Login | Contact Us |

## News

Press Releases

In the News

Upcoming Events

## In the News

05/17/16
Monroe Capital Supports Source Capital, LLC's Acquisition of a Business Services Company

05/13/16
Monroe Capital investing $1 billion in alternative lending platforms
more

## For media inquiries:

Douglas Allen, BackBay Communications
646.722.4270 or via email

## Monroe Capital Establishes a Retail and Consumer Products Asset Based Lending Group

11/04/15

Chicago, IL, November 4, 2015 – Monroe Capital LLC today announced that it has established a new business vertical, Retail and Consumer Products Asset Based Lending. In addition, Andy Moser and Marc Price have joined Monroe Capital to co-head this new finance practice group. Andy and Marc will be based in the firm's Boston office.

"We are very excited to establish this new group focusing on retail and consumer products asset based lending. This new finance group complements our existing healthcare, technology, media, and ESOP focused verticals," said Ted Koenig, President & CEO of Monroe Capital. "We are also pleased to add Andy and Marc to the Monroe Capital team. They are both seasoned professionals. Their talents, combined with the firm's leading reputation, deep and long term capital base, and credit focused infrastructure, will create the "go to" financing partner for companies and private equity sponsors alike in the retail and consumer products space."

Prior to Monroe, Andy was President and CEO of Salus Capital Partners, LLC, Senior Vice President and Head of Asset Based Lending at First Niagara Bank, and Senior Vice President and Head of Asset Based Lending at NewAlliance Bank. In addition, Andy has held senior level positions with GMAC Asset Based Finance and Wells Fargo Foothill Capital Finance. Andy has over 25 years of experience in the commercial finance, asset based lending and retail industries.

Prior to Monroe, Marc was Executive Vice President at Salus Capital Partners, LLC, Vice President at EMCC, Inc., a Schottenstein Stores Corporation affiliate, and Principal at State Street Global Advisors. Marc has more than 20 years of financial services and asset based lending experience.

### About Monroe Capital

Monroe Capital LLC is a leading provider of senior and junior debt and equity co-investments to middle-market companies in the U.S. and Canada. Investment types include unitranche financings, cash flow and enterprise value based loans, asset based loans, acquisition facilities, mezzanine debt, second lien or last-out loans and equity co-investments. Monroe Capital prides itself on its flexible investment approach and its ability to close and fund transactions quickly. Monroe is committed to being a value-added and user-friendly partner to owners, senior management and private equity sponsors. Monroe has been recognized by Global M&A Network as the 2013, 2014 and 2015 Small Middle Markets Lender of the Year, Private Debt Investor as the 2013 Unitranche Lender of the Year and the 2014 Senior Lender of the Year, and the U.S. Small Business Administration as the 2015 Small Business Investment Company (SBIC) of the Year. To learn more about Monroe Capital LLC, visit www.monroecap.com.

Copyright ©2016 Monroe Capital LLC. All rights reserved

| | | Search |

# EXHIBIT B



Supporting the growth of your business
with asset-based lending solutions.
That's Sterling.

STERLING
NATIONAL BANK

snb.com

FREE MEMBERSHIP Includes # ABL Advisor eNews + iData Blasts | JOIN NOW

LOGIN   ABOUT  |  FAQ  |  CONTACT

JOIN NOW >



# ABL ADVISOR

## SERVING ASSET-BASED LENDING DECISION MAKERS

ARTICLES   NEWS   BLOGS   PRESS RELEASES              search the site

HOME   SECTOR/ECONOMIC DATA   DEAL TABLES   DIRECTORY   EVENTS CALENDAR   ADVERTISE   SUBSCRIBE

Home / Articles / Monroe Capital's Koenig & Moser Talk Retail ABL

Recommend  3      Tweet      Share   23    G+1  1      Email      Print

# Monroe Capital's Koenig & Moser Talk Retail ABL

**By:** Stuart P. Papavassiliou
**Date:** Nov 12, 2015 @ 07:00 AM
Filed Under: Company Profile

Related: Andrew Moser, Asset Based, Monroe Capital
LLC, Private Equity, Retail, Retail Finance, Ted Koenig

Only last week, the industry learned that Monroe
Capital launched a new asset-based lending unit geared
toward the retail and consumer product vertical with
well-known industry professionals – Andrew Moser and
Marc Price – to co-lead the new effort. In the following
exclusive interview with *ABL Advisor*, Ted Koenig speaks
frankly about the thinking behind the move, Monroe's
choice of leadership and the advantages Monroe Capital
brings to borrowers in the sector. *ABL Advisor* also
speaks with Andy Moser, who provides insights into the
unique and complex dynamics retailers and their lenders
face in today's environment.

**ABL Advisor:** Aside from the fact that a retail finance
offering complements Monroe Capital's existing

verticals, why did you decide to form this vertical now and what are the current market dynamics
that convinced you that this is the right time for Monroe to establish an asset-based lending
group geared toward this sector?

**Ted Koenig:** We have been following this space for quite some time.
If you recall, our early roots at Monroe were in doing second lien,
asset-based term loans in the 2000 to 2003 period for retail deals such
as Zany Brainy, FAO Schwartz, Family Toy, Payless Cashways, MC
Sports, Natural Wonders and others. Over the years since, we have
become predominantly first lien, senior secured lenders. Our portfolio
has grown quite a bit since those early days—we now have about $3
billion in the ground with over 220 companies as borrowers in virtually
every Moody's industry class. Our healthcare, technology and media
verticals have been very successful for us.



THEODORE L. KOENIG
President & CEO
Monroe Capital LLC

Retail and consumer goods accounts for about 30% of the U.S. gross
domestic product and many of our current customers are in this market
segment. We see an opportunity to capitalize on our deep, long-term
dated and permanent capital base, together with a history of best in
class underwriting and credit, to be a "solutions oriented" lender in this space. There has been,
and will continue to be, dislocation in the retail lending space, with what has been happening to
regulated financial institutions courtesy of the Fed, OCC, Comptroller and so forth, combined with
the recent drastic consolidation in the overall asset-based lending market and to the retailers

**25 OFFICES
18 COUNTRIES
OVER 3,000 APPRAISALS
COMPLETED ANNUALLY**

SECTOR/ECONOMIC DATA

**U.S. Census Bureau – U.S. Department
of Commerce**

Advance Monthly Sales for Retail and Food
Services – April 2016

**U.S. Census Bureau – U.S. Department
of Commerce**

Manufactur ing ADVISOR **PROFESSIONAL NETWORK**
Sales - Mar      Connecting Industry Professionals

**VIEW ALL SECTOR/ECONOMIC DATA**

FEATURED ARTICLES

**The EU Bail-In Rules -- Implications for
U.S. Asset-Based Lenders**

Buchalter Nemer attorneys Anthony
Callobre and Christopher Barry...

by Anthony R. Callobre & Christopher
Barry

**Encina Business Credit Takes on the
Non-bankable Middle Market**

ABL Advisor catches up with Marty
Battaglia, Andrew Salter, Paul...

by Michael A. Toglia

**MOST POPULAR | ALL ARTICLES**

themselves, as many have been and will be increasingly challenged by the Internet. We have the ability to provide a clean and elegant solution to middle-market companies operating in this space that the banks today simply cannot match in terms of availability, liquidity and flexibility of structure. As it has been the case with our other verticals, my guess is that we will become preferred partners to companies and to other banks in this space, rather than being viewed as competitors.

**ABL Advisor:** Our readers are of course familiar with Andy and Marc from their many years in the industry. With their collective experience in mind, what made you choose Andy and Marc to be the right team to co-head this new vertical at Monroe Capital?



**Koenig:** Together, Andy and Marc have almost 50 years of experience in the retail and the consumer products space as lenders and investors. They have worked for multiple and different lending platforms; some successful and some not. They have had their share of wins and also their share of losses. Some of the losses were the result of institutional or regulatory issues associated with their past employers and some, unfortunately, were self-inflicted. Nevertheless in my opinion, there are not two better people in the industry that have the depth and breadth of knowledge and relationships with retailers and consumer products

MARC S. PRICE
Co-Head, Retail & Consumer ABL Group
Monroe Capital, LLC

companies. Andy and Marc's relationships extend to the many private equity sponsors, investment banking firms, turnaround management consultants and the other professionals that deal regularly in this space. These guys understand what retailer borrowers need and when they need it from a financing standpoint. The talents of Andy and Marc, combined with the "zero loss, credit first" mentality and stellar track record of Monroe, should result in a winning combination for this new vertical of ours.

**ABL Advisor:** Andy, please share with our readers what attracted you and Marc to Monroe and the opportunity to launch this new group as part of Monroe Capital?



**Andy Moser:** What attracted us to Monroe were many things; first and foremost, quite simply, the people -- many of whom we have been close to, respect and have admired for many, many years. While the vertical is new for Monroe, their comfort and knowledge of the industry sector and relevant asset classes gives Marc and me great comfort that we have a unified approach and the ability to execute consistently for the market in a way that allows us to meet and often exceed the expectations of our customers and partners. Additionally, their existing and broader infrastructure and platform undoubtedly aids in our ability to scale this new vertical and allow us to focus with safety and soundness top of mind. Lastly, Monroe's consistent and well-respected track record, together with a diverse and permanent capital base, made the decision to join an obvious one. To build on what we do best and with our many years of experience to draw upon

ANDREV H. MOSER
Co-Head, Retail & Consumer ABL Group
Monroe Capital, LLC

now inside of an existing best in class organization, affords us an amazing opportunity that we look forward to being a part of for many years to come.

**ABL Advisor:** From what we gather, the retail sector faces some unique and significant challenges -- changes in spending habits brought about by e-Commerce and keeping in step with millennials and their habits, the migration away from second tier malls and the real estate and other issues this migration poses. What is your outlook for the sector and what does it take to succeed given these challenges?

*Continued on Page 2...*

1    2    Next ››

## Comments From Our Members

You must be an ABL Advisor member to post comments. Login or Join Now.



KNOW YOUR STUFF?
**PROVE IT!**

BECOME A CERTIFIED
ACCOUNT EXECUTIVE
IN FACTORING

Any Qualified Candidate
Can TAKE THE EXAM

OVER 300 EXAM LOCATIONS
Across North America

Join The Growing
Ranks of CAEF's
and Sign-up
TODAY!

FOR INFORMATION VISIT
WWW.FACTORING.ORG
OR CALL 805-773-0011

# EXHIBIT C

Dec. 16, 2015

**Bloomberg Brief | Leveraged Capital**   2

# NEWS

## Monroe Capital's Moser Sees 'Plenty of Opportunity' in Retail

BY CAROL KO, BLOOMBERG BRIEF

Andy Moser, the former head of Salus Capital Partners, has assumed a new role at Monroe Capital as head of the retail /consumer lending division, where he will broaden his focus beyond brick-and-mortar retailers to include wholesalers, transportation companies and other distribution channels in the consumer goods supply chain.



"There will be plenty of opportunities in retail. Technology will drive a lot of the successes or failures, and retailers will have to spend a lot on investments. That capital has to come from somewhere," Moser said in a Dec. 10 phone interview.

Monroe's retail division will focus on loans ranging from $10 million to $35 million, with the ability to write checks of up to $100 million.

Andy Moser

"We can go competitively lower in pricing because we have flexibility due to Monroe's varied permanent capital structures, and at the same time we can price risk where it makes sense," Moser said.

Moser says his background working in asset-based lending at GBFC, a division of the Gordon Brothers Companies, has informed his underwriting in the retail sector, enabling him to make better assumptions about what the liquidated inventory and

assets of a company may actually be worth.

"A strength of mine has been to find and extract value and liquidity for the borrower," he said.

His industry knowledge also may enable Monroe to say yes to risky deals that other lenders decline.

"Inventory to us is what receivables are to other people," Moser said. "We get our fair share of flow and new transactions from folks that don't like inventory and don't understand it."

Moser's focus at Monroe will shift toward longer-duration deals. "We'll still look at underperforming companies, turnarounds and debtor-in-possession loans, but we'll need to see duration in the credit, 12 to 18 months of liquidity and a reason for being there," said Moser.

"We're looking for undermanaged — not mismanaged — companies," he added.

Under Moser's leadership, middle-market lender Salus Capital Partners issued turnaround loans to numerous smaller retailers, including Frederick's of Hollywood, Delia's and Bluefly. The lender worked with struggling companies with liquidity shortfalls, and several of them filed for bankruptcy shortly after receiving a lifeline, including teen clothing stores Comark and Cache.

Salus's largest transaction under Moser's leadership — and its largest transaction to date — was its turnaround loan to electronics retailer RadioShack, which filed for bankruptcy on Feb. 5 after efforts to revive its business failed.

## Looser Leverage Restrictions May Shake Up Flagging BDC Sector

BY CAROL KO, BLOOMBERG BRIEF

Business development companies may be one step closer to higher leverage limits as legislation to expand credit access for small businesses works its way toward a vote by the House of Representatives.

In November, the House Financial Services Committee passed HR 3868, the Small Business Credit Availability Act, by a vote of 53 to four.

Still, the bill's future remains up in the air, as it may expire before the House and Senate get a chance to review it.

The bill would increase the ratio of debt to equity BDCs must maintain from 1:1 to 2:1.

Many BDCs are trading below book

value and are barred from tapping the equity markets for capital without shareholder approval. They therefore are unable to raise additional debt without breaching the 1:1 coverage ratio.

Proponents of the legislation say that the measure is designed to counteract this weakness in the model and enable BDCs to lend to larger companies with more cash flow.

"That higher leverage certainly should not be applied to smaller companies," said Sean Coleman, chief credit officer of Franklin Square Capital Partners. "I think the market will limit it. I don't think people will automatically go to 2:1 — most will try to stay below 1 to begin with just to be careful."

It's unclear whether there was a statistically measurable rationale behind the original 1:1 limit, so the likelihood of an increase in defaults or deterioration in credit quality under a 2:1 ratio is unclear, according to Fitch analyst Meghan Neenan.

"We tend to view more leverage negatively, but we may get comfortable with it if you can reduce risk. It would require a lot more data from BDCs," Neenan said.

"I'm cautious on who will use it wisely. I think there will be good stewards and bad stewards," said Brad Marshall, senior managing director of GSO Capital Partners.



BUILD A NEWS FILTER FOR TWEETS   TWTR <GO>

# EXHIBIT D

AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT ARBITRATION

SALUS CAPITAL PARTNERS, LLC

              Claimant,

   v.

ANDREW MOSER

             Respondent.

Case 01-15-0004-9758

## AFFIDAVIT OF BRENDAN M. DOYLE, ESQ.

I, Brendan M. Doyle, do hereby depose and state as follows:

1.     I am Deputy General Counsel at HRG Group, Inc.  HRG Group, Inc. is the ultimate parent company of Claimant Salus Partners, LLC.  I am also Salus' Chief Compliance Officer.  Except where otherwise indicated, I make this Affidavit based on my personal knowledge.

2.     Salus has become aware of certain activity of Respondent Andrew Moser from Salus borrowers.  For example, one Salus borrower told Salus that on February 25, 2016, Mr. Moser traveled to California to meet with China Pearl.  Salus was also told that around this time, Mr. Moser traveled to North Carolina to meet with Mitchell Gold.

3.     I have also been told that since starting at Monroe Capital, Mr. Moser has traveled to Texas and had a trip scheduled to Louisiana.

4.     On May 9, 2016, Mr. Moser traveled to Chicago for Monroe Capital credit/loan committee meetings to approve the refinancing of a $30,000,000 loan to Hampshire, another Salus borrower.

5.    I have read an email, dated late April 2016, in which Mr. Moser claimed that he has built a loan pipeline of $600,000,000 since starting at Monroe Capital.

6.    I have been told by someone with personal knowledge that on April 22, 2016, Mr. Moser attended a Boston Celtics playoff game in the luxury box of the law firm Choate, Hall & Stewart, counsel with whom Mr. Moser worked while at Salus.

Signed under the penalties of perjury this 19th day of May, 2016.

Brendan M. Doyle

2

# EXHIBIT E

From: Harold <Harold@cpilg.com>
Date: February 25, 2016 at 3:49:21 PM EST
To: Kyle Shonak <KShonak@saluscapital.com>
Subject: FW: Call

Hi Kyle,

Thank you for calling me last night.
This morning we had meeting with Andy and Marc, we have signed the term sheet and gave them the deposit to start the due diligent work.
They are very happy that we went with them, and they said 3-4 weeks before we go to lawyers.
Once we ask you to send us the lawyer fee than we can give better date to Salus.

Call me I will explain more.

Thank you

Harold Jabarian

CPI Luxury Group
10220 Norris Avenue
Pacoima, CA 91331

1-818-249-9888 Ext 123

1

# EXHIBIT F



DOUGLAS S. BROOKS
Email: dbrooks@libbyhoopes.com

February 5, 2016

BY E-MAIL AND FIRST-CLASS MAIL

Steven M. Veenema, Esq.
Murphy & King
One Beacon Street
Boston, M A 02108

Re:   *Salus Capital Partners, LLC v. Andrew Moser*

Dear Steve:

I am enclosing a Notice of Deposition for Mr. Moser. Please let me know if there are any issues with the proposed date.

Very truly yours,

Douglas S. Brooks

cc:   Charles R. Bennett, Esq. (by email)

AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT ARBITRATION

SALUS CAPITAL PARTNERS, LLC

Claimant,

v.

ANDREW MOSER

Respondent.

Case 01-15-0004-9758

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Claimant Salus Capital Partners, through its undersigned attorneys, will take the deposition upon oral examination of Respondent Andrew Moser, on Wednesday, March 16, 2016 at 9:30 a.m. at the offices of LibbyHoopes, P.C., 399 Boylston Street, Boston, MA 02116, before a notary public or other person authorized to administer oaths. The examination will continue from day to day until completed. You are invited to attend and cross examine.

Respectfully submitted,

SALUS CAPITAL PARTNERS, LLC

By its Attorneys

Douglas S. Brooks (BBO No. 636697)
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
(617) 338-9300
dbrooks@libbyhoopes.com

Dated:  February 5, 2016

# EXHIBIT G

From:           Steven M. Veenema <SVeenema@murphyking.com>
Sent:           Friday, March 11, 2016 2:29 PM
To:             Douglas Brooks
Cc:             Charles  R. Bennett
Subject:        Salus v. Moser

Dear Doug:

Per our conversation earlier this week, I am writing to confirm my understanding that, for health-related reasons, including limitations imposed on his activities by his treating physician, Andrew Moser will not be available for a deposition on March 16, 2016.

I am unable at this time to offer any date when he might become available.

Regards,
Steve

Steven M. Veenema
Direct Tel 617-226-3497
Email   sveenema@murphyking.com

 | Murphy&King Professional Corporation
Counsellors at Law

One Beacon Street, 21st Floor, Boston, MA 02108
T:(617) 423-0400 F: (617) 423-0498
www.murphyking.com

-------------------------------
This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify Murphy & King, P.C. Immediately -- by replying to this message or by sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any attachments. Thank you. For more information about Murphy & King, P.C., please visit us at http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.
-------------------------------

1

# EXHIBIT H

From:       Steven M. Veenema <SVeenema@murphyking.com>
Sent:       Friday, March 11, 2016 2:52 PM
To:         MicheleGomez@adr.org
Cc:         Douglas Brooks; Charles R. Bennett
Subject:    Salus Capital Partners, LLC v. Andrew Moser - Case 01-15-0004-9758

Dear Ms. Gomez,

I write on behalf of the Respondent in the matter above, to request that you pass along the e-mail below to Arbitrator Fellu. Thanks, in advance, for your assistance.

Dear Arbitrator Fellu:

I write to notify you of a potential scheduling issue in the matter above, for which discovery is currently scheduled to close next week, on March 18. Although written discovery is largely complete and the parties have mostly resolved any disputes involving the same, other discovery has been placed on hold due to the unavailability of our client, Andrew Moser, whom we understand has various health-related issues involving his heart, which have substantially limited his activities. We further understand that he is scheduled to have additional procedures in late April, which may impact the timing of the Hearing.

We have already alerted Salus's counsel to this issue, but wanted to make sure you were aware of it is well. We will communicate further updates as we have them.

Very Truly Yours,

Steven M. Veenema
Direct Tel 617-226-3497
Email  sveenema@murphyking.com

MK | Murphy&King Professional Corporation
                 Counsellors at Law
One Beacon Street, 21st Floor, Boston, MA  02108
T:(617) 423-0400  F: (617) 423-0498
www.murphyking.com

---

This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify Murphy & King, P.C. immediately -- by replying to this message or by sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any attachments. Thank you. For more information about Murphy & King, P.C., please visit us at http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

# EXHIBIT I

From: Andrew De Camara [mailto:ad@sherwoodpartners.com]
Sent: Tuesday, April 26, 2016 6:11 PM
To: Kyle Shonak <KShonak@saluscapital.com>
Subject: Re: China Pearl

Correct. He told Andy that he is in the pearl business not the litigation business. That's what Harold told me.

Sent from my iPhone

On Apr 26, 2016, at 2:03 PM, Kyle Shonak <KShonak@saluscapital.com> wrote:

Hey,

Andrew just told me that Harold told you when you were out there that Andy Moser called up Harold to tell him to sue us because we didn't have a CA Lenders license?

He said Harold said he wasn't interested right?

Kyle

Kyle C. Shonak
President
Salus Capital Partners, LLC
197 First Avenue, Suite 110
Needham, MA 02494
Direct: 617-420-2663
Mobile: 508-282-7491
Email: kshonak@saluscapital.com
www.saluscapital.com

Salus Capital, a registered investment adviser with the Securities and Exchange Commission, archives and reviews outgoing and incoming email and may produce any email at the request of regulators. This transmission, including any attachments, is neither an offer nor a solicitation of an offer to buy or sell securities. This email is intended solely for the use of the recipient. If you are not the intended recipient you should not disseminate, distribute or copy this email but instead should notify the sender immediately by email if you received this by mistake and delete this email from your system. Further, nothing contained herein should be considered or relied upon as an offer or commitment to lend and does not constitute an approval of Salus' credit authorities under any circumstances. To unsubscribe from further email communication, the recipient should send a request to unsubscribe@saluscapital.com. -

Salus Capital, a registered investment adviser with the Securities and Exchange Commission, archives and reviews outgoing and incoming email and may produce any email at the request of regulators. This transmission, including any attachments, is neither an offer nor a solicitation of an offer to buy or sell securities. This email is intended solely for the use of the recipient. If you are not the intended recipient you should not disseminate, distribute or copy this email but instead should notify the sender immediately by email if you received this by mistake and delete this email from your system. Further, nothing contained herein should be considered or relied upon as an offer or commitment to lend and does not constitute an approval of Salus' credit authorities under any circumstances. To unsubscribe from further email communication, the recipient should send a request to unsubscribe@saluscapital.com. -

# EXHIBIT J

5/19/2016                                    Upcoming Events | Monroe Capital LLC


**Monroe Capital**
*Innovative Capital Creating Value*

Chicago   New York   Los Angeles   San Francisco

Atlanta   Boston   Charlotte   Dallas   Toronto

| Home | About Us | Industry Verticals | Transaction Types | Management Team | Investments | News | Investor Login | Contact Us |
|------|----------|--------------------|--------------------|------------------|-------------|------|----------------|------------|

## News

Press Releases

In the News

Upcoming Events

## Upcoming Events

Please visit us at our upcoming events:

05/26/16 – *Montage Hotel, Beverly Hill CA*
YPO Program - Mergers and Acquisitions (MAST)
Ted Koenig will speak on the Financing panel from 1:15 pm – 2:30 pm.

06/01/16 – *Gaylord Opryland Resort & Convention Center, Nashville, TN*
TMA Southeast Regional Conference & Capital Mall
Glenn Flinn and Joe Rodgers will attend.

06/06/16 – *Hyatt Regency, Minneapolis, MN*
ACG Minnesota Upper Midwest Capital Connection
Jeff Kolke will attend.

06/07/16 - *New York Hilton & Towers, New York, NY*
NYIC's 97th Annual Awards Banquet
Andrew Moser will attend.

06/07/16 - *Grand Hyatt, New York, NY*
Jefferies 2016 Healthcare Conference
Glenn Flinn will attend.

06/14/16 - *Detroit Athletic Club, Detroit, MI*
ACG Detroit - 8th Annual M&A Conference
Jeff Kolke will attend.

06/23/16 - *Westin Grand Hotel, Munich, Germany*
Private Debt Investor Germany Forum
Zia Uddin will be a panelist speaker on the "Understanding The Spectrum of Opportunities
Within Private Debt" panel at 10:30 am. Sean Duff will attend.

06/23/16 - *Nashville Omni Hotel, Nashville, TN*
ACG Mid-South Capital Connection
Joe Rodgers will attend.

06/26/16 - *The Venetian & The Palazzo Hotel-Resort, Las Vegas, NV*
HFMA 2016 National Institute
Matt Evans will attend.

09/21/16 - *Jefferson Hotel, Richmond, VA*
ACG Richmond Capital Conference 2016
Glenn Flinn will attend.

AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT ARBITRATION

SALUS CAPITAL PARTNERS, LLC,

Claimant,

vs.

ANDREW MOSER,

Respondent.

AAA Case No. 01-15-0004-9758

## RESPONDENT'S RENEWED MOTION TO CONTINUE HEARING

Respondent Andrew Moser ("Mr. Moser") moves again to continue the hearing of this matter until his primary care physician agrees he is healthy enough to participate in it. In support of this request, Mr. Moser relies on the attached letter from Dr. Ronald Katz (Exhibit A) and further states as follows:

1.      More than two months ago, in early March, Mr. Moser's undersigned counsel notified Claimant's counsel that, for health-related reasons, Mr. Moser would be unavailable for a deposition in March, and that it was unclear when Mr. Moser would be healthy enough for a deposition or other participation in this matter.

2.      On March 11, 2016, through an email to the American Arbitration Association, Mr. Moser's counsel alerted the Arbitrator to the possibility that Mr. Moser's ill health and related procedures scheduled for late April might impact the hearing dates that were then scheduled for May.

3.      On March 21, 2016, Mr. Moser formally moved to continue the originally-scheduled May hearing dates by at least 45 days, because limitations imposed on him by his health and the anticipated April procedures precluded him from preparing for and appearing at

any hearing or deposition. In the motion, Mr. Moser specifically noted that, upon completion of the testing and procedures he was to undergo in late April, he would know more about when he might be more capable of participating in this matter.

4.      On April 4, 2016, the parties conducted a case management conference at which the Arbitrator agreed to postpone the hearing dates until Jun 15, 2016, but set a follow-up conference for May 3, 2016, when Mr. Moser's counsel anticipated having a clearer sense of Mr. Moser's availability.

5.      During the May 3rd conference call, Mr. Moser's counsel reported their understanding that Mr. Moser's circumstances remained unchanged, and that Mr. Moser would be unavailable for the foreseeable future.

6.      Dr. Katz, Mr. Moser's primary care physician, has since confirmed this in a letter dated May 6, 2016: "it would be detrimental to Mr. Moser's health and current progress if he is involved in any formal dispute resolution at this time, whether in the context of being involved directly or indirectly, depositions or presenting live testimony. . . ." Ex. A.

7.      Dr. Katz is the co-founder of PersonalMDs, a personalized primary care practice in Chestnut Hill that is also affiliated with Brigham and Women's Hospital, Beth Israel Deaconess Medical Center, Newton Wellesley Hospital, and Partners Healthcare. Dr. Katz has been treating Mr. Moser since April 2015, and has been coordinating his care with a cardiologist and gastrointestinal surgeon at Brigham and Women's. *See* Ex. A.

8.      Dr. Katz specifically recommended that Mr. Moser postpone "any active work with counsel or other professionals engaging in dispute resolution or activities similar in nature" through the remainder of this year, while he continues to undergo testing and observation.

2

9.     There is no reason to require Mr. Moser to go against his doctor's recommendation by participating in this matter. To the contrary, doing so would severely prejudice Mr. Moser's right and ability to defend Salus's substantial claims against him.

WHEREFORE, Mr. Moser respectfully requests that this matter be temporarily stayed at least through the remainder of 2016 so that he can focus on his recovery and on improving his health.

Respectfully submitted,

ANDREW MOSER,

By his attorneys,

Charles R. Bennett (BBO #037380)
Steven M. Veenema (BBO #672097)
MURPHY & KING, P.C.
One Beacon Street
Boston, MA 02108
T: 617.423.0400
F: 617.423.0498
cbennett@murphyking.com
sveenema@murphyking.com

Dated: May 11, 2016

CERTIFICATE OF SERVICE

I certify that the foregoing document was served on the date set forth below by causing true and correct copies thereof to be delivered by e-mail and by hand to:

Douglas S. Brooks
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
dbrooks@libbyhoopes.com

Steven M. Veenema

Dated: May 11, 2016

4

*EXHIBIT A*

# Personal*MDs*

*Securing your healthcare future*

Dr. Jeffrey Bass / Dr. Ronald Katz
Dr. Laurie Katzman / Dr. Bradford Weiner

May 6, 2016

To whom it may concern,

I am Andrew Moser's primary care physician since April 2015. He is also followed by his cardiologist and gastrointestinal surgeon at Brigham and Women's Hospital.

Based on his current medical conditions I highly recommend that Andrew reduce his work related stress for the purposes of maintaining normal blood pressure and heart rate.

Without getting into the specifics of his condition, I can report that he has undergone significant testing and procedures these past several months that have affected his physical health, and have caused him a great deal of stress.

For these reasons, it would be detrimental to Mr. Moser's health and current progress if he is involved in any formal dispute resolution at this time, whether in the context of being involved directly or indirectly, depositions or presenting live testimony, particularly in a matter where high risk situations are involved.

My recommendation is that he avoids such levels of stress or avoidable situations which can often produce unhealthy levels of anxiety at least through the remainder of this year, while undergoing additional tests and observation, before beginning any active work with counsel or other professionals engaging in dispute resolution or activities similar in nature.

Sincerely,

M.D.

Ronald Katz, M.D.

RMK/rg

25 Boylston Street, Suite 312, Chestnut Hill, MA 02467 / Phone 617-307-3200 / Fax 617-307-3201
Affiliated with Brigham and Women's Hospital, Beth Israel Deaconess Medical Center and Harvard Medical School

## AMERICAN ARBITRATION ASSOCIATION
## EMPLOYMENT ARBITRATION

SALUS CAPITAL PARTNERS, LLC

        Claimant,

v.

      Case No. 01-15-0004-9758

ANDREW MOSER

        Respondent.

### SALUS CAPITAL PARTNERS, LLC'S PRE-HEARING MEMORANDUM

Claimant Salus Capital Partners, LLC ("Salus" or "Claimant") submits the following Pre-Hearing Memorandum to outline for the Arbitrator the key legal and factual issues pertaining to the Hearing in this matter. This Pre-Hearing Memorandum is not intended to be an exhaustive recitation of all of the relevant legal and factual issues that will be presented at the Hearing.

### PROCEDURAL BACKGROUND

On September 11, 2015, Claimant filed its Demand for Arbitration against Respondent Andrew Moser ("Moser" or "Respondent"). As set forth in its Description of Claims, Salus' claims arise from Moser's fraud, willful misconduct, embezzlement, willful misapplication and willful misappropriation of corporate funds, as well as breaches of his fiduciary duties. On October 13, 2015, Moser submitted his Response to Salus' Description of Claims and Statement of Counterclaim. On November 2, 2015, Salus submitted its Response to Moser's Statement of Counterclaim.

On February 5, 2016, after the Arbitrator allowed Salus' request to take Moser's deposition (with no objection from Moser's then-counsel), Salus served a notice for Moser's deposition to take place on March 16, 2016. On March 11, 2016, through counsel, Moser stated that he could not appear for a deposition due to health reasons.

**EXHIBIT**

Arbitrator's

Ex. 4

On March 25, 2016, Moser filed a motion to continue the hearing in this matter (then scheduled to begin on May 10, 2016), citing unidentified health issues. On April 4, 2016, the Arbitrator held a conference call with the parties. During that conference, based on Moser's claimed health issues, the Arbitrator continued the hearing until June 15, 2016 and ordered that Moser's deposition take place in May 2016. Accordingly, on April 11, 2016, Salus served Moser's counsel with its first amended deposition notice, scheduling Moser's deposition for May 23, 2016.

On May 3, 2016, the Arbitrator conducted a conference call in which Moser's counsel represented that Moser would be unavailable for a deposition or Hearing for the foreseeable future. During that call, Salus provided information concerning Moser's recent activities that contradicted certain of Moser's assertions concerning his health. Accordingly, the Arbitrator ordered that Moser "provide medical certification of his condition and of his ability or inability to proceed with the scheduled deposition and hearing dates . . . ."

On May 11, 2016, Moser filed a renewed motion to continue the hearing, asking for an indefinite continuance of the Hearing "at least through the remainder of 2016." While Moser attached a letter from his physician, the letter failed to address the substantial level of Moser's activity that Salus had previously detailed. The Arbitrator denied Moser's renewed motion to (indefinitely) continue the Hearing but did postpone the June 15, 2016 Hearing date. The Arbitrator further ruled that Moser's physician would have to testify at a (non-preliminary) Hearing for the Arbitrator to consider further continuing the Arbitration based on Moser's alleged health issues. Moser's counsel indicated that Moser was "unwilling to voluntarily involve his physician in this matter further."

2

On May 26, 2016, Salus moved to dismiss Moser's counterclaim on the ground that Moser had failed to pay his share of the arbitration fees, which were by then significantly past due. On June 10, 2016, Moser's counsel filed an opposition to the motion to dismiss along with their notice of withdrawal.

On June 14, 2016, the Arbitrator held a further conference call. During that call (in which Moser's former counsel participated), the Arbitrator ruled that he would be dismissing Moser's counterclaims.[1] The Arbitrator also scheduled another call for six weeks out—to July 26, 2016—in an effort to provide Moser sufficient time to retain successor counsel. The Arbitrator told the parties that while he was not going to set a date certain, it was his intent to schedule the Arbitration Hearing for three days in September 2016.

Moser appeared *pro se* on the July 26, 2016 call (after multiple reminders from Salus' counsel) and stated that he had not retained counsel. During that call, with the assent of both parties, the Arbitrator scheduled the Arbitration Hearing for October 5, 6 and 7, 2016 and scheduled a Preliminary Hearing conference call for September 8, 2016. The Arbitrator also ruled that Moser must appear for a deposition no later than September 19, 2016. On that same date, Salus served Moser with a second amended deposition notice for August 17, 2016.

Meanwhile, on August 9, 2016, AAA provided the parties notice that there would be a conference call with the Arbitrator on August 11, 2016. Despite multiple reminders in the form of emails, calls, and text messages from Salus' counsel, Moser failed to appear for the August 11 conference call. As a result of Moser's absence, the Arbitrator rescheduled the call for the following day, August 12, 2016, so that Moser could appear. Despite receiving written notice of

---

[1]     The Arbitrator memorialized this ruling in an Order dated June 17, 2016.

3

the rescheduled call, as well as a call and text from Salus' counsel, Moser again failed to appear for the rescheduled conference call.

Two days later, on August 14, 2016—in response to additional reminders from Salus' counsel—Moser informed Salus' counsel that he would not be appearing for his deposition on August 17, 2016 because he had not yet retained counsel. Accordingly, on that same day, Salus served Moser with a third amended deposition notice for September 7, 2016. On September 3, 2016—again after multiple queries from Salus' counsel—Mr. Moser informed Salus' counsel that he would again not be appearing for his deposition because he had not retained counsel.

In response to this further cancellation, on September 7, 2016, Salus served Moser with its fourth amended deposition notice, scheduling the deposition for September 19, 2016, the final date by which the Arbitrator had ordered Mr. Moser must submit to a deposition.

The following day, September 8, 2016, Moser failed to appear for the previously scheduled Preliminary Hearing conference call, despite reminder calls, texts, and emails from Salus' counsel. During the September 8 call, the Arbitrator scheduled a further conference call for September 23, 2016.

On September 16, 2016, in response to multiple queries from Salus' counsel, Moser stated by email (with a copy to the Arbitrator) that he would not be appearing for his deposition on September 19 (the next business day), writing, ". . . I have not yet secured counsel and cannot appear until I do so." In response to Moser's email, the Arbitrator wrote to the parties that "neither the deposition schedule nor the hearing itself will be adjourned due merely to the fact that Mr. Moser has not succeeded in obtaining counsel." Nonetheless, Moser failed to appear for his noticed deposition on September 19, 2016.

4

On September 23, 2016, and despite multiple reminder calls, emails, and texts from Salus' counsel, Moser failed to appear for the conference call with the Arbitrator.

On September 26, 2016, Salus advanced all of Moser's unpaid arbitration fees, such that the Hearing could proceed as scheduled on October 5, 6 and 7, 2016.

### FACTUAL BACKGROUND

Claimant expects the evidence will show the following:

#### *The Parties*

1.      Salus is a Delaware limited liability company with its principal place of business in Needham, Massachusetts. Salus was formed in late 2011 to provide secured asset-based loans to the middle market across a variety of industries. Salus is a wholly owned subsidiary of HRG Group, Inc. ("HRG"), a publicly traded company on the New York Stock Exchange (NYSE: HRG). Salus' Manager is HGI Asset Management Holdings, LLC ("HAMCO"), also a wholly owned subsidiary of HRG. HAMCO is also a member of Salus.

2.      In or about November 2011, Salus hired Moser as its President and Chief Executive Officer.

#### *Employment Agreement*

3.      Salus and Moser are parties to the Amended and Restated Employment Agreement (the "Employment Agreement"), dated August 26, 2014.

4.      The Employment Agreement provides in relevant part:

a.      That Moser "shall comply with (i) the laws of the United States and all other applicable jurisdictions, and (ii) such Company policies, rules, regulations, performance standards, and manuals as may be published or amended from time to time that are consistent with this Agreement." § 1(e).

5